IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SEAN JOSEPH BECKER,** | ) | |
| Petitioner, | ) | Civil Action No. 08-136 Erie |
| | ) | |
| v. | ) | District Judge Sean J. McLaughlin |
| | ) | Magistrate Judge Susan Paradise Baxter |
| **DISTRICT ATTORNEY OF ERIE CO.** | ) | |
| **et al.,** | ) | |
| Respondents. | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.  REPORT

On September 23, 2005, an Erie County jury found Petitioner, Sean Joseph Becker, guilty of one count of robbery, three counts of attempted robbery, one count of terroristic threats, and one count of receiving stolen property. The court sentenced him to an aggregate term of imprisonment of 9-18 years. Becker now raises the following five claims for federal habeas relief:

**Claim 1**   The trial court erred in refusing funding for a mental health expert;

**Claim 2**   The trial court erred in denying his motion to sever the counts against him;

**Claim 3**   His sentence was excessive in that the court imposed consecutive sentences and did not give consideration to mitigating circumstances, such as his remorse for his actions, his drug addiction, and the fact that no one was physically injured;

**Claim 4**   His trial commenced after Pennsylvania's 180-day limit prescribed by Pennsylvania Rule of Criminal Procedure 600;

1

**Claim 5**    The trial court erred in failing to give "felony three charges" to the jury;

**Claim 6**    Trial counsel was ineffective for failing to seek a change of venue.

[Petition, ECF No. 1 at pp. 5-10, 16-18].

### A.    Relevant Background[1]

The charges against Becker arose from multiple criminal episodes that occurred over a period of approximately one hour (between around 6:30 a.m. and 7:30 a.m.) on the morning of February 11, 2005. During that time, he entered the passenger side of three different vehicles, threatened the drivers, and demanded rides and money. He approached a fourth victim in a parking lot and demanded the victim's purse.

After Becker's arrest, the trial court appointed Jack Grayer, Esq., to represent him. On August 9, 2005, he filed an omnibus pre-trial motion, which consisted in relevant part of a motion for appointment of a mental health expert, a motion to sever, and a notice of insanity. (CP Dkt. No. 8). The Honorable William J. Cunningham denied Becker's motions following a hearing on August 15, 2005. (CP Dkt. No. 10; 8/15/05 Hr'g Tr.).

Following Becker's September 2005 trial (which was presided over by the Honorable John A. Bozza) and convictions, he filed a motion for new trial and/or acquittal, which the court denied. (CP Dkt. Nos. 17, 21). On October 27, 2005, the court sentenced him as follows:

| | |
|---|---|
| Count I | criminal attempt (robbery) – 24-48 months (with 259 days credit) |
| Count II | robbery – 24-48 months, consecutive to Count I |
| Count III | criminal attempt (robbery) – 24-48 months, consecutive to Count II |
| Count IV | criminal attempt (robbery) – 36-72 months, consecutive to Count III |
| Count V | receiving stolen property – merged with Count II |

---

[1]    Respondents have submitted the Court of Common Pleas' file and transcripts. The documents contained in that court's file are numbered 1 through 46 and shall be cited to as "CP Dkt. No. __ ."

Count VI         terroristic threats – 6-24 months, concurrent to Count IV

The court subsequently appointed Joseph P. Burt, Esq., to represent Becker in his appeal with the Superior Court of Pennsylvania. In that appeal, Becker raised two relevant claims: that Judge Cunningham erred in denying his pre-trial request (1) for a psychiatric evaluation, and (2) to sever the counts against him. (CP Dkt. No. 31 at ¶¶ 9, 11). Those are the same two claims that he raises in the instant habeas petition as Claim 1 and Claim 2, respectively.

Next, Judge Cunningham issued a Rule 1925(b) Opinion setting forth why Becker's allegations of pre-trial error should be denied. (CP Dkt. No. 33, Commonwealth v. Becker, No. 889 of 2005, slip op. (C.P. Erie Apr. 25, 2006)). On January 2, 2007, the Superior Court issued a Memorandum in which it denied Becker's claims and affirmed his judgment of sentence. (CP Dkt. No. 34, Commonwealth v. Becker, No. 2155 WDA 2005, slip op. (Pa.Super. Jan. 2, 2007)). The Pennsylvania Supreme Court denied Becker's petition for allowance of appeal on May 31, 2007. (CP Dkt. No. 35).

On or around July 5, 2007, Becker filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*., in which he raised numerous claims for relief, including all of the claims he now raises in the instant federal habeas petition. (See CP Dkt. No. 45 at p. 3, summarizing PCRA claims). The PCRA Court appointed William J. Hathaway Esq., to represent him. Hathaway subsequently filed a "no-merit" letter and an accompanying petition to withdraw as counsel in which he explained that in his opinion Becker had failed to assert any colorable claim for post-conviction relief. (CP Dkt. No. 44).

The PCRA Court granted Hathaway's petition to withdraw. On or around November 26, 2007, it issued a Memorandum in which it denied Becker's PCRA petition without a hearing pursuant to Rule 907(a) of the Pennsylvania Rules of Criminal Procedure. (CP Dkt. No. 45, Commonwealth v. Becker, No. 889 of 2005, slip op. (C.P. Erie Nov. 26, 2007)).

Becker did not appeal the PCRA Court's decision.

Next, Becker commenced proceedings in this Court by filing the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which is the federal habeas statute applicable to state prisoners. [ECF No. 1; see also Brief for Petitioner, ECF Nos. 8, 11]. Under this statute, habeas relief is only available on the grounds that Becker's judgment of sentence was obtained in violation of his rights under the United States Constitution. 28 U.S.C. § 2254(a).[2] See, e.g., Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'").

Respondents have filed their Answer [ECF No. 13] and the state court record, and the case is ripe for review.

### B. Discussion

#### 1. Claims 3 through 6 Must Be Denied Because Becker Failed To Raise Them On Appeal To the Superior Court

##### (a) The exhaustion requirement

Section 2254 codifies the doctrine of "exhaustion," which provides that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). This doctrine is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002), quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991). Exhaustion

---

[2] Section 2254(a) provides that a district shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*." (Emphasis added). There are no applicable federal statutes or treaties.

4

"addresses federalism and comity concerns by 'affording the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" Parker v. Kelchner, 429 F.3d 58, 61 (3d Cir. 2005), quoting Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993), which quoted Vasquez v. Hillery, 474 U.S. 254, 257 (1986). The petitioner carries the burden of proving exhaustion of all available state remedies. See, e.g., Lambert, 134 F.3d at 513.

Importantly, in order to exhaust a claim, a petitioner must "fairly present" it *to each level of the state courts*. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848; Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, — U.S. — , 130 S.Ct. 612 (2009). In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition first to the Common Pleas Court and then the Superior Court either on direct or PCRA appeal. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Moreover, to "fairly present" a claim for exhaustion purposes, "a petitioner must have presented a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted," McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999), and must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim," Anderson v. Harless, 459 U.S. 4, 6 (1982), quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971). See also Baldwin v. Reese, 541 U.S. 27, 29-34 (2004); Nara v. Frank, 488 F.3d 187, 197-99 (3d Cir. 2007).

"It is not sufficient that all the facts necessary to support the federal claim were before the state courts." Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001). For example, a mere "passing reference to a 'fair trial'" is insufficient to put the state court on notice that petitioner is asserting a federal constitutional claim. Id. at 415. "If state courts are to be given the opportunity to correct alleged

5

violations of its prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam). Thus, as the Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Id. at 366.

As the above-cited history of this case demonstrates, although Becker appears to have raised Claims 3 through 6 to the PCRA Court, he did not appeal that court's denial of them to the Superior Court. As a result, he did not exhaust them. O'Sullivan, 526 U.S. at 845 ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Although, generally, a district court should require that a state prisoner return to state court to exhaust those claims that are not exhausted, see Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), the court may "excuse" a petitioner's failure to exhaust as "futile" if it is clear that his claims are now barred from review under state law. Gray v. Netherland, 518 U.S. 152, 161 (1996). Futility is established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims." Lines, 208 F.3d at 164.

Here, requiring Becker to return to state court to attempt to litigate his unexhausted claims would be "futile" because he is foreclosed from doing so under Pennsylvania law. The 30-day time period during which he could have appealed the PCRA Court's decision has long since expired, see Pa.R.A.P. 903, and he would be unable to proceed with a second PCRA petition since it would be untimely, 42 Pa.C.S. § 9545(b)(1), and would be deemed to contain waived and/or previously litigated claims,

6

42 Pa.C.S. § 9544(b). Accordingly, it would be "futile" for Becker to return to state court and attempt to litigate his unexhausted habeas claims.

### (b) Procedural default

A finding by a district court that exhaustion is "futile" often results, as it does here, in a finding that the claims at issue are barred from federal habeas review. The Court of Appeals for the Third Circuit has repeatedly instructed that "claims deemed exhausted because of a state procedural rule are deemed procedurally defaulted." Lines, 208 F.3d at 160; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner has failed to raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). The doctrine essentially provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule, and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977); Lines, 208 F.3d at 162-69. Because Becker failed to exhaust Claims 3 through 6, they are procedurally defaulted.

This Court may review a procedurally defaulted habeas claim only where a petitioner can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750.[3]

---

[3] Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). See also House v. Bell, 547 U.S. 518 (2006); Houck v. Stickman, 625 F.3d 88, 93-95 (3d Cir. 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004). It only applies in

7

Becker points to no evidence which would establish "cause" for his default. After the PCRA Court permitted Hathaway to withdraw as his counsel and denied his claims for post-conviction relief, it expressly advised him that had 30 days to appeal, either *pro se* or through privately retained counsel. (CP Dkt. No. 46). Becker did not file an appeal. He claims that he could not afford private counsel and "did not know the law well enough to handle" the appeal himself. Those reasons are not sufficient to demonstrate "cause" to overcome the default his claims. Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal. Murray v. Carrier, 477 U.S. 478, 486-88, 494 (1986); see also Coleman, 501 U.S. at 752 ("ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice).

Based upon all of the foregoing, Claims 3 through 6 should be denied because they are procedurally defaulted.

### 2. Becker Is Not Entitled To Habeas Relief On Claims 1 and 2

#### (a) Claim 1: Challenging the Denial Of the Request For Funds For the Appointment Of a Mental Health Expert

As set forth above, in his pre-trial omnibus motion, Becker requested the appointment of a mental health expert to support an insanity defense. (CP Dkt. No. 8; see also 8/15/05 Hr'g Tr. at pp. 4-5, 60). Under Pennsylvania law, a defendant is not automatically entitled to the appointment of a mental health expert. Rather, "[t]he provision of public funds to hire experts to assist in the defense against

---

extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id.; Hubbard, 378 F.3d at 339-40. It is not applicable to Becker's case.

8

criminal charges is a decision *vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of that discretion*." Commonwealth v. Albrecht, 720 A.2d 693, 707 (Pa. 1998) (emphasis added), citing Commonwealth v. Carter, 643 A.2d 61, 73 (1984). "Generally, the trial court will not be found to have abused its discretion in the absence of a clear showing as to the content, relevancy and materiality of the testimony of the potential witnesses." Commonwealth v. Bell, 706 A.2d 855, 862 (Pa.Super. 1998) (citations omitted).

At the August 15, 2005, pre-trial hearing, Becker's counsel, Attorney Grayer, stated to Judge Cunningham:

> [Becker] claims at the time of the … criminal incident, that he essentially was out of control, did not know the nature or concept of what was going on and indicated [to me] at least his belief [that at] the time he essentially didn't have the requisite competence to know the difference from right or wrong. In other words, would meet the legal definition of true – of being insane at the time. I have no means of independently evaluating that, so I request the Court to appoint a psychologist – psychiatrist, I suppose … to determine whether or not there's any evidence of that to support the defendant's assertion that he was insane at the time.

(8/15/05 Hr'g Tr. at p. 4). The prosecutor objected to Becker's request, explaining: "I have officers who dealt with him on this morning present here to testify. In addition, I have the video tape of his statement, both of which should give us some insight as to how he appeared and how he acted on the morning in question." (Id. at p. 5).

The prosecutor then called Corporal Kenneth Kensill of the Erie Police Department to testify. He and his partner are the officers who arrested Becker. He stated that Becker had exhibited behavior that indicated that he was high on crack cocaine. (Id. at pp. 10-13). On cross-examination by Grayer, Corporal Kensill testified that Becker had not indicated to him that he was having hallucinations or hearing voices, and again stated that Becker had seemed to be under the influence of a controlled substance. (Id. at pp. 18-19). Judge Cunningham then conducted follow-up questioning:

9

| | | |
|---|---|---|
| The Court: | | To your observation, what was his ability to understand what you were saying or other officers were saying? |
| Kensill: | | I believed he understood us. He didn't have any problem. He was following the orders that we were giving him. We walked him to the cruiser, put him in the cruiser. We didn't have to carry him, didn't have to drag him to the cruiser. He wasn't being defiant in this manner. Upon arrival to the station, he walked into the station on his own power, wasn't staggering. |

- - -

| | | |
|---|---|---|
| The Court: | | But he didn't indicate to you that he had any medical condition? |
| Kensill: | | Negative. |
| The Court: | | Or that he was hallucinating or hearing voices? |
| Kensill: | | No. |
| The Court: | | Was he laboring under a defect of reasoning so as to be incapable of knowing what he was doing? |
| Kensill: | | I don't believe so. He gave no indication to me. |

(Id. at pp. 20-23).

Erie Police Officer Stephen Goozdich testified next. He was one of the initial officers at the scene of Becker's arrest and was there when he was booked and when he gave his videotaped statement. Officer Goozdich testified that Becker was "agitated" and "seemed to be mad." (Id. at pp. 28-29). Next, Becker's videotaped statement, which he had given approximately three hours after he committed the crimes, was played for the court. In it, Becker admitted that he had smoked crack cocaine and had been drinking wine that morning. (Id. at pp. 35-36, 45). He also stated that he had been "pretty drunk" and "loaded out of my mind." (Id. at p. 42).

At the conclusion of the pre-trial hearing, Judge Cunningham denied Becker's request for the appointment of a mental health expert, stating:

10

> I've had the opportunity to listen to the evidence, listen to the officers who had contact with Mr. Becker on the … morning in question. I listened to what their observation were of his lucidity, of his demeanor, of his ability to hear and respond to questions, his ability to interact both when he was taken into custody and then when he was booked and then also when he gave a statement.
>
> I've had the opportunity to observe the defendant while he was on the video tape. And the video tape corroborates what the police officers testified to in terms of the defendant's condition …
>
> ---
>
> I did hear the reference during the video tape that he was out his mind but I attribute that to his use of drugs and/or alcohol, not to someone who is insane at the time.

(8/15/05 Hr'g Tr. at pp. 61-62).

On direct appeal, Becker claimed that Judge Cunningham erred in denying his request for a mental health evaluation. In rejecting this claim on the merits, the Superior Court observed that although legal insanity is a defense under Pennsylvania law, see 18 Pa.C.S. § 315, voluntary intoxication or voluntary drugged condition is not, see id. § 308. (CP Dkt. No. 35, Becker, No. 155 WDA 2005, slip op. at pp. 6-7). It then held that:

> In making its determination, the trial court relied heavily on a videotaped statement that [Becker] gave after he was arrested…. The statement was taped at the police station approximately three hours after the last incident. N.T., 8/15/05, at 35. In the statement, which makes up approximately fourteen pages of transcripts, [Becker] tells the police that he had smoked crack and was drinking alcohol approximately two hours before the first incident. Id. at 35, 45. He also stated that his intent was to rob the victims so that he could purchase more crack. Id. at 37
>
> After watching the videotape and hearing the testimony of police officers who observed [Becker] immediately after he was arrested, the court concluded that [Becker's] demeanor, his ability to interact, his lucidity, and his ability to understand questions and formulate answers did not reflect that [Becker] was insane. Id. at 61-62. Instead, the court concluded that if [Becker] was mentally impaired, it was due to his use of drugs and/or alcohol. Id. We find that the record supports such a determination, and accordingly, we discern no abuse of discretion in the court's denial of [Becker's] motion to appoint a psychological expert.

(Id. at pp. 7-8 (footnote omitted)).

11

In Claim 1 of his habeas petition, Becker takes issue with the Superior Court's adjudication of his claim and contends that "[i]t was error by the court to deny psychiatric funding." [ECF No. 1 at p. 5]. He has failed to show, however, that his rights under the United States Constitution were implicated by Judge Cunningham's decision, as required by 28 U.S.C. § 2254. There is no indication in the documents contained in the record before this Court that, when he raised this same claim in his direct appeal, he alleged a violation of any federal constitutional right. The records show that he raised the issue as a matter of state law, and that is how the Superior Court reviewed it. It determined that Judge Cunningham did not abuse his discretion in denying his request for expert funding, and this court has no authority to re-examine state court determinations on state law questions. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.").

It also is worth pointing out that Becker presents no evidence whatsoever to support his contention that he was insane when he committed the crimes at issue. In his habeas petition, he claims that he "was diagnosed with major depression and anxiety and [has] been medicated since 1998." [ECF No. 1 at p. 5]. Even if that is the case, he has not established that those diagnoses fall within the very limited definition of "legally insane" under Pennsylvania law, which "means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that was he was doing was wrong." 18 Pa.C.S. § 315(b).

Finally, even if Becker is raising a claim that his due process rights under the Fourteenth Amendment were violated by the decision to deny him the appointment of a mental health expert, and even if he had properly raised that claim in the state courts (and there is no indication that he did), he would not be entitled to any habeas relief because he cannot establish, in light of all of the evidence admitted at the pre-trial hearing, that Judge Cunningham's decision rose to the height of unconstitutional denial of due process.

For all of the foregoing reasons, Claim 1 should be denied.

### (b)     Claim 2:  Challenging the Joinder Of Offenses

In Claim 2, Becker challenges Judge Cunningham's pre-trial decision to deny his motion to sever. In that motion, he contended that, since the incidents at issue occurred at four different locations, he should be tried separately for the crimes committed at each location because otherwise he would be "unjustifiably prejudiced." (CP Dkt. No. 8 at p. 2. See also 8/15/05 Hr'g Tr. at pp. 56-57).

In denying this claim on direct appeal, the Superior Court noted that "[t]he decision whether to grant a motion for severance is a matter within the sound discretion of the trial court and should not be disturbed absent a manifest abuse of discretion." (CP Dkt. No. 34, Becker, No. 2155 WDA 2005, slip op. at p. 8, quoting Commonwealth v. Chester, 587 A.2d 1367, 1372 (Pa. 1991)). It observed that Pennsylvania's Rules of Criminal Procedure permit that offenses charged in separate indictments or informations may be tried together, and also that the court may order separate trials, if it appears that any party may be prejudiced by offenses being tried together. (Id., quoting Commonwealth v. Burton, 770 A.2d 771, 775-76 (Pa.Super. 2001), which quoted Pa.R.Crim.P. 1127 and 1128 (renumbered and amended as Rules 582 and 583, respectively, effective Apr. 1, 2001)). It then noted that:

> Pursuant to these rules, we must determine:

13

> [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative; [3] whether the defendant will be prejudiced by the consolidation of the offenses.
>
> In deciding whether the evidence of each offense would be admissible in a separate trial, we must keep in mind that:
>
> > [e]vidence of distinct crimes [is] not admissible against a defendant being prosecuted for another crime solely to show his bad character and his propensity for committing criminal acts. However, evidence of other crimes … may be admissible … where the evidence is relevant for some legitimate purpose….
> >
> > - - -
> >
> > Further, evidence of other crimes is admissible in situations whether the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development. This … is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.
>
> In the instant case, [Becker] committed all four offenses in a short span of time; approximately one hour. All of the victims were drivers, and they were all in close proximity to one another. His admitted purpose was to rob these victims of money to purchase crack. Thus, each crime was part of a chain of events with a common goal. The "complete story" being that [Becker] went on a one-hour carjacking spree during which he attempted to rob four victims in order to get money to purchase crack. Under these circumstances, we conclude that the trial court did not abuse its discretion in denying [Becker's] motion to sever.

(Id. at pp. 9-11, quoting Burton, 770 A.2d at 775-76 (overruled on other grounds, Commonwealth v. Mouzon, 812 A.2d 617, 623 (Pa. 2002)).

In Claim 2 of his habeas petition, Becker takes issue with the Superior Court's decision to deny this claim of alleged pre-trial error. Similar to Claim 1, however, he has failed to show that his rights under the United States Constitution were implicated by Judge Cunningham's decision to deny his motion to sever, as required by 28 U.S.C. § 2254. See, e.g., United States v. Lane, 474 U.S. 438, 446 n.8 (1986) ("[i]mproper joinder does not, in itself, violation the Constitution. Rather, misjoinder would

14

rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."). There is no indication in the documents contained in the record before this Court that, when Becker raised this same claim in his direct appeal, he alleged a violation of any federal constitutional right. Rather, he raised the issue as a matter of state law, and that is how the Superior Court reviewed it. Because this Court has no authority to re-examine state court determinations on state law questions, see, e.g., Estelle, 502 U.S. at 67-68, Becker can receive no habeas relief on Claim 2.

Additionally, even if Becker is raising a claim that his due process rights under the Fourteenth Amendment were violated by the joinder of offenses, and even if he raised that claim in the state courts (there is no indication that he did), he would not be entitled to any habeas relief because he has not established that Judge Cunningham's decision to deny his motion to sever denied him a fair trial. See Herring v. Meachum, 11 F.3d 374, 377-78 (2d Cir. 1993) ("where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial.").

For all of the foregoing reasons, Claim 2 should be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should

issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Becker's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 7, 2011
cc: The Honorable Sean J. McLaughlin
United States District Judge

16